UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> DANA L. MCINTYRE, <br><br> Defendant | Criminal No. 21cr10162 <br><br> Violations: <br><br> <u>Counts One-Four</u>: Wire Fraud <br> (18 U.S.C. § 1343) <br><br> <u>Counts Five-Seven</u>: Money Laundering; Aiding and Abetting <br> (18 U.S.C. §§ 1957 and 2) <br><br> <u>Wire Fraud Forfeiture Allegation</u>: <br> (18 U.S.C. § 981(a)(1)(C) and <br> 28 U.S.C. § 2461) <br><br> <u>Money Laundering Forfeiture Allegation</u>: <br> (18 U.S.C. § 982(a)(1)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. The defendant, DANA L. MCINTYRE ("MCINTYRE"), was a resident, variously, of Essex, Massachusetts and Grafton, Vermont.

2. MCINTYRE owned and operated Rasta Foods, Inc., doing business as Rasta Pasta Pizzeria ("Rasta"), a restaurant in Beverly, Massachusetts that was incorporated in Massachusetts on or about November 3, 2015, and dissolved as a registered entity on or about June 28, 2019.

3. MCINTYRE was the settlor and trustee of Triple D Family 2020 Trust under agreement dated June 16, 2020 ("Triple D Family Trust"), a Vermont trust.

4. Kabbage, Inc. ("Kabbage") was a privately held financial technology company headquartered in Atlanta, Georgia.

5. The United States Small Business Administration ("SBA") was an agency of the executive branch of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

## The CARES Act

*A. The Economic Injury Disaster Loan Program*

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic. Among other things, the CARES Act expanded the SBA's Economic Injury Disaster Loan ("EIDL") program to provide loans of up to $2 million to small businesses that suffered "substantial economic injury" from COVID-19. The EIDL program required recipients to use EIDL funds only on certain business expenses, including payments of fixed business debts and payroll.

7. EIDL funds were issued directly from the United States Treasury. Applicants applied through the SBA via an online portal. The EIDL application process required applicants to provide information concerning the affected business, including the number of employees, gross revenues, and costs of goods sold in the 12 months prior to January 31, 2020, as well as information about the business owner. Applicants electronically certified that the information provided was accurate.

8. The SBA relied on the information provided by the applicant to determine how much money the small business was eligible to receive in the form of EIDL funds. Additionally, by checking a box in the online EIDL application, an applicant could request and receive $1,000 per employee, up to $10,000, in an EIDL Cash Advance Grant. The applicant was not required to repay an EIDL Cash Advance Grant, even if (i) the SBA ultimately denied the EIDL application or (ii) the applicant ultimately declined the loan.

*B. The Paycheck Protection Program*

9. The CARES Act also provided funding for forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program ("PPP").

10. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications. In the PPP loan application (SBA Form 2483), the small business, through its authorized representative, was required to state, among other things, (i) the number of individuals it employed and (ii) its average monthly payroll expenses. These figures were used to calculate the amount of a PPP loan the small business was eligible to receive. In addition, businesses applying for a PPP loan were required to provide documentation of their payroll expenses.

11. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own money, but the loan was guaranteed by the SBA. Data from the application, including information about the

borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

12.     PPP loans were required to be used to pay for certain expenses—including payroll costs, mortgage interest, rent, and utilities—and were forgivable if used for these expenses within a designated period of time and if a certain portion of the proceeds were applied toward payroll.

C. *Pandemic Unemployment Assistance*

13.     The CARES Act also created a temporary federal unemployment insurance program called Pandemic Unemployment Assistance ("PUA"). PUA provided unemployment benefits for individuals who were not eligible for other types of unemployment benefits, including those who were self-employed, independent contractors, or gig economy workers.

14.     The Massachusetts Department of Unemployment Assistance ("DUA") administered and managed PUA in Massachusetts. In Massachusetts, weekly benefits for PUA recipients ranged between $267 and $855.

15.     The CARES Act also created a temporary federal program called Federal Pandemic Unemployment Compensation ("FPUC") that operated between March 29, 2020 and July 25, 2020, and provided an additional $600 weekly benefit to PUA recipients.

16.     Between August 1, 2020 and September 5, 2020, PUA claimants were eligible to receive an additional $300 per week in Federal Lost Wage Assistance ("FLWA") funded by the Federal Emergency Management Agency ("FEMA").

17.     The PUA claim process required a claimant to provide his or her first and last name, Social Security number, date of birth, and a residential and/or mailing address. The claim process

also required the claimant to provide a phone number and an email address to be used by DUA to provide updates, contact the claimant, and/or authenticate claim information.  Additionally, the claim process required a claimant to verify his or her identity through a combination of personal identifying information, internet protocol addresses, email and/or bank account information, and other proof of identification.  PUA claims submitted to the DUA online were processed via a server located in Colorado.

18.     To be eligible to receive PUA benefits, a claimant was required to submit a weekly certification indicating if the claimant had worked and/or received any income during the identified week.  The certification required the claimant to acknowledge, among other things, that it was illegal to collect unemployment while working and/or to fail to report all income to the DUA.

The Scheme to Defraud

19.     Beginning in or around March 2020, and continuing until at least in or around May 2020, MCINTYRE devised and executed a scheme to fraudulently obtain pandemic-related relief funds—including EIDL funds, PUA and related unemployment benefits, and a PPP loan—by making materially false statements on applications submitted to the DUA for unemployment benefits, and on EIDL and PPP loan applications, and by improperly using the fraudulently obtained loan funds for personal expenses.

A.  The Falsified EIDL Applications

20.     On or about March 31, 2020, shortly after EIDL funds became available under the CARES Act, MCINTYRE submitted an EIDL application to the SBA on behalf of "Marley's Pizza, Inc.," doing business as "Rasta Pasta Pizzeria," for a loan in the amount of approximately

$150,000 (the "Marley's Application"). MCINTYRE indicated on the application that the business had six employees and gross revenues of $545,679 for the 12 months prior to January 31, 2020 (an average of $45,473 in monthly sales).

21. Upon submitting the Marley's Application online, MCINTYRE selected the statement, "I would like to be considered for an advance of up to $10,000."

22. That same day, MCINTYRE submitted a second EIDL application in the name of his daughter, purportedly doing business as "Dana's Dank Pies," for a loan in the amount of $15,500. MCINTYRE identified his daughter as the owner of the purported business and provided her Social Security number and date of birth. MCINTYRE claimed that Dana's Dank Pies had two employees and gross revenues of $38,900 for the 12 months prior to January 31, 2020. MCINTYRE provided the routing information for Rasta's payroll account on this application.

23. Also that same day, MCINTYRE submitted an EIDL application in the name of his son, purportedly doing business as "[Son] Entertainment," for a loan in the amount of $36,300. MCINTYRE identified his son as the owner of the purported business and provided his son's Social Security number and date of birth. MCINTYRE claimed that the business had two employees and gross revenues of $112,332 for the 12 months prior to January 31, 2020.

24. In fact, neither "Dana's Dank Pies" nor "[Son] Entertainment" was an actual business.

25. The SBA denied the EIDL applications submitted on behalf of "Dana's Dank Pies" and "[Son] Entertainment" on April 20, 2020 and August 17, 2020, respectively. On or about April 21, 2020, in response to the Marley's Application, the SBA disbursed an EIDL Cash

Advance Grant of $6,000 ($1,000 per each of the six employees MCINTYRE claimed) to Rasta's payroll account at NorthEast Community Bank ("NorthEast") in White Plains, New York.

26. MCINTYRE did not pursue the Marley's Application further after he subsequently obtained PPP Funds for Rasta, as set forth below. On or about July 20, 2020, the SBA informed MCINTYRE by letter that it had withdrawn the Marley's Application from active consideration due to inactivity.

B. The Falsified PUA Claim

27. On or about April 28, 2020, MCINTYRE filed a claim for federal unemployment benefits with the DUA (the "PUA Claim"). On the PUA Claim, MCINTYRE falsely indicated that his employment status had been affected by COVID-19 beginning on March 28, 2020 and that he had received no earnings since that date.

28. In fact, MCINTYRE continued to operate Rasta and to pay himself income from Rasta's business account during March and April 2020, and he therefore was not eligible to receive unemployment benefits.

29. On or about April 29, 2020, DUA issued a Notice of Monetary Determination indicating that MCINTYRE was eligible to begin receiving PUA benefits as well as FPUC benefits.

30. MCINTYRE submitted weekly certifications to the DUA from on or about April 28, 2020 until at least on or about September 9, 2020. On each weekly certification, MCINTYRE falsely stated that he had not worked and had not earned income during the week identified on the

certification. MCINTYRE also acknowledged that "[c]ollecting unemployment benefits while you are working full time" and "[f]ailing to report all income to the [DUA]" was "against the law."

31. In fact, MCINTYRE continued to operate Rasta and to pay himself income from Rasta's business account during the weeks for which he submitted these certifications, and he therefore was not eligible to receive unemployment benefits for these weeks.

32. From on or about April 28, 2020 to on or about September 9, 2020, MCINTYRE collected more than $17,000 in PUA, FPUC, and FLWA benefits to which he was not entitled.

C. The Falsified PPP Loan Application

33. On or about April 30, 2020—just two days after submitting his claim for DUA benefits—MCINTYRE submitted a PPP loan application to Kabbage in the name of Rasta seeking a loan in the amount of $661,615 (the "PPP Application"). MCINTYRE electronically signed the PPP Application and certified that the information in it, and in supporting documents he provided, was true and accurate.

34. The PPP Application falsely stated that Rasta's average monthly payroll was $264,646 and that the company had 47 employees. In fact, during the year prior to MCINTYRE's submission of the PPP Application, Rasta had many fewer employees and its monthly payroll expenses were less than $5,000.

35. Together with the PPP Application, MCINTYRE submitted an IRS Form W-3 (Transmittal of Wage and Tax Statements) (the "Form W-3") for Rasta dated December 18, 2019, which he signed. On the Form W-3, MCINTYRE falsely claimed that Rasta had 47 employees and paid $1,584,877.46 in wages, tips, and other compensation in 2019.

8

36.     Kabbage approved the PPP Application that same day and submitted it to the SBA. On or about May 7, 2020, Kabbage disbursed $661,615 in PPP loan funds to MCINTYRE via a wire transfer to Rasta's payroll account at NorthEast.

D.  The Unlawful Monetary Transactions with PPP Loan Funds

37.     MCINTYRE used the fraudulently obtained PPP loan funds for personal expenses unrelated to Rasta.

38.     For example, on or about June 12, 2020, MCINTYRE transferred $40,000 from Rasta's payroll account to his personal bank account. On or about June 16, 2020, MCINTYRE used that money to put down a deposit in the amount of $39,500 toward the purchase of an alpaca farm in Grafton, Vermont.

39.     On or about June 22, 2020, MCINTYRE issued a check in the amount of $575,000 from Rasta's payroll account to the client account of a Vermont law firm that represented him in connection with the farm purchase.

40.     On or about July 31, 2020, the law firm closed on the purchase of the farm, in the name of MCINTYRE's Triple D Family Trust, for $395,000.

41.     On or about September 10, 2020, the law firm issued a check in the amount of $209,500 to Triple D Family Trust. MCINTYRE deposited these funds into the trust's bank account on or about October 1, 2020. MCINTYRE subsequently used these funds for expenses unrelated to Rasta.

## COUNTS ONE THROUGH FOUR
### Wire Fraud
### (18 U.S.C. § 1343)

The Grand Jury charges:

42. The Grand Jury re-alleges and incorporates by reference paragraphs 1-41 of this Indictment.

43. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

DANA L. MCINTYRE,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | March 31, 2020 | EIDL application electronically submitted to the Small Business Administration on behalf of "Dana's Dank Pies" |
| 2 | March 31, 2020 | EIDL application electronically submitted to the Small Business Administration on behalf of "[Son] Entertainment" |
| 3 | April 28, 2020 | PUA claim electronically submitted in Massachusetts to the DUA via servers in Colorado |
| 4 | April 30, 2020 | PPP application electronically submitted to Kabbage via servers in Virginia |

All in violation of Title 18, United State Code, Section 1343.

## COUNTS FIVE THROUGH SEVEN
### Money Laundering
### (18 U.S.C. § 1957)

The Grand Jury further charges:

44. The Grand Jury re-alleges and incorporates by reference paragraphs 1-43 of this Indictment.

45. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### DANA L. MCINTYRE,

knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, as set forth below, where such property was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Approximate Date | Description |
|---|---|---|
| 5 | June 12, 2020 | $40,000 transfer from Rasta's payroll account to MCINTYRE'S personal account at NorthEast Community Bank |
| 6 | June 22, 2020 | $575,000 check from Rasta's payroll account at NorthEast Community Bank to law firm escrow account |
| 7 | September 10, 2020 | $209,500 check from law firm escrow account to Triple D Family Trust |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

46. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Four, the defendant,

DANA L. MCINTYRE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following assets:

   a. a parcel of land with a dwelling thereon, also known as 366 Houghtonville Road, Grafton, Vermont, with all appurtenances and improvements thereon;

   b. at least eight (8) live alpacas, purchased on or about September 20, 2020 and December 25, 2020;

   c. $109,922.69 seized from Brattleboro Savings and Loan account ending in 4614, in the name of Triple D Family Trust; and

   d. a classic 1950 Hudson automobile, bearing VIN 50034215.

47. If any of the property described in Paragraph 46, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 46 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The Grand Jury further finds:

48. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957 set forth in Counts Five through Seven, the defendant,

DANA L. MCINTYRE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following assets:

   a. a parcel of land with a dwelling thereon, also known as 366 Houghtonville Road, Grafton, Vermont, with all appurtenances and improvements thereon;

   b. at least eight (8) live alpacas, purchased on or about September 20, 2020 and December 25, 2020;

   c. $109,922.69 seized from Brattleboro Savings and Loan account ending in 4614, in the name of Triple D Family Trust; and

   d. a classic 1950 Hudson automobile, bearing VIN 50034215.

49. If any of the property described in Paragraph 48, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 48 above.

  All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
DAVID M. HOLCOMB
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: MAY 25, 2021
Returned into the District Court by the Grand Jurors and filed.

/s/ Harold Putnam 5/25/2021; 2:04 p.m.
_____
DEPUTY CLERK

_____
HON. MARIANNE B. BOWLER
United States Magistrate Judge

Date: May 25, 2021